# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| S.H., as Guardian of M.S. (a minor), ) | Civil Action No. 2:22-cv-243-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | |
| ) | |
| Board of Trustees of the Colleton County ) | **ORDER AND OPINION** |
| School District, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Before the Court is Defendants' motion to dismiss (Dkt. No. 21). For the reasons set forth below, the Court rules as follows.

**I.     Background**

Plaintiff is the mother and guardian of M.S. (a minor) and brings this action in her own name for the benefit of and on behalf of M.S. Plaintiff alleges that, while attending Colleton County Middle School, M.S. was bullied, harassed, and sexually assaulted because of his disability. Plaintiff brings claims against Defendants[1] pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, the Fourteenth Amendment to the United States Constitution, and South Carolina state law. (Dkt. No. 19).

---

[1] Defendants are the Board of Trustees of the Colleton County School District, Colleton County School District (the "District"), Colleton Middle School, Lauren Behie – Principal Colleton County Middle School, Sharon Witkin – Chairperson of the Board of Trustees of the Colleton County School District, Charles Murdaugh – Vice Chairperson of the Board of Trustees of the Colleton County School District, Vallerie Cave – Superintendent of the Colleton County School District, Deanna Parish – Director of Special Services of Colleton County School District, Jacinta Bryant – Director of Special Services of Colleton County School District, and Does 1 – 20).

1

Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21). Plaintiff opposes. (Dkt. No. 22).

Defendants' motion is fully briefed and ripe for disposition.

## II.     Legal Standard

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    Discussion

### a.  Defendants Are Not Entitled to Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars all of Plaintiff's claims. (Dkt. No. 21 at 3). In support of this contention, Defendants cite *Smith v. School District of Greenville Cty.*, 324 F. Supp. 2d 786 (D.S.C. 2004), a case which found that the School District of Greenville County was an arm of the state and immune from private suit under the Fair Labor Standards Act. In opposition, Plaintiff cites cases decided after *Smith* which have found school districts are not arms of the state. *See, e.g.*, *Grady v. Spartanburg School District*, No. 7:13-cv-2020, 2014 WL 1159406 (D.S.C. 2014); *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. 5*, 438 F. Supp. 2d 609 (D.S.C. 2006), *rev'd on other grounds and remanded sub nom. Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062 (4th Cir. 2006).

The Eleventh Amendment prevents a federal court from entertaining a suit brought by a citizen against his own state, *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), or against an instrumentality of the state considered an "arm of the State[.]" *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 430, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). "Eleventh Amendment immunity has attributes of both subject matter jurisdiction and personal jurisdiction." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). Like subject matter jurisdiction, it may be raised at any time but it may also be waived by the state like personal jurisdiction. *Id.* at 481. The United States Court of Appeals for the Fourth Circuit has articulated a non-exhaustive list of four factors to be considered when determining whether or not a state-created entity is an arm of the state, and thus entitled to protection from suit by the Eleventh Amendment. *S.C. Dept. of Disabilities and Special Needs v. Hoover Univ. Inc.*, 535 F.3d 300, 303 (4th Cir.2008). These factors are:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the

3

> entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with State concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

*Id.* (internal citations and alterations omitted); *see also Cash v. Granville Cnty. Bd. Of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001) (applying the same factors in a school district context). "These factors endeavor to draw the line between 'a State-created entity functioning independently of the State from a State-created entity functioning as an arm of the State or its alter ego.'" *U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012) (internal citations omitted). The treasury inquiry is dispositive—if a state's treasury will be impacted, courts must draw a conclusion of Eleventh Amendment immunity. *Cash*, 242 F.3d at 223. However, if the treasury is not impacted, the remaining three factors must be analyzed to determine whether a judgment against the government entity would "adversely affect the dignity of the State as a sovereign and as one of the United States." *Id.* at 224. Therefore, the district court must explicitly perform this analysis before making a ruling on an Eleventh Amendment immunity defense. *Id.* at 581.

Here, neither party argues that the State's treasury would be affected by a judgment in favor of Plaintiff. Therefore, the Court finds that a judgment in Plaintiff's favor would have no effect on the State's treasury. Having made this determination, the Court proceeds to the next step, "keeping in mind that the most important factor—the [lack of] vulnerability of the State's purse—counsels against a finding of immunity. *Cash*, 242 F.3d at 225 (internal quotation marks omitted).

### a. Extent of the State's Control Over the District

As to the extent of the State's control over the District, the Fourth Circuit in *Ellerbe Becket* acknowledged a warning from the United States Supreme Court that "gauging actual

control … can be a perilous inquiry, an uncertain and unreliable exercise." *Maryland Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d, 255 261 n. 10 (4th Cir. 2005) (internal quotation marks omitted). As such, the court "encourage[d] district courts to analyze … three factors rather than engaging in a free-wheeling inquiry into the autonomy of the state entity in question": (1) "whether the state retains a veto over the entity's actions," (2) "the origins of the entity's funding," and (3) "who appoints the entity's directors." *Id.* at 261 & n. 10 (internal quotation marks omitted).

As to these factors, Defendants argue only, citing *Smith*, that South Carolina's "statutes and regulations establish pervasive control over school districts." (Dkt. No. 21 at 5).

As reasoned in *Child Evangelism Fellowship* and *Grady*, the Court finds that the Fourth Circuit's analysis in *Cash* weighs in favor of finding that the District has sufficient autonomy such that a judgment against Defendants would not affront the dignity of the State. The District is an independent body which may sue and be sued, purchase liability insurance, and retain private counsel, as it has in this case, without permission of the South Carolina Attorney General. *Cash,* 242 F.3d at 225; S.C. Code Ann. §§ 59–17–10 (1976) (defining each district as a body corporate and stating that it may sue or be sued in its name), 1–11–140 (1986) (purchasing liability insurance). Similarly, the District board may purchase and hold real and personal property, build and repair buildings, and declare bankruptcy. *Cash,* 242 F.3d at 225; S.C. Code Ann. §§ 59–17–10 (holding real and personal property), 59–19–90(5) (1976) (managing property), 59–19–180 (1976) (purchasing property), 59–19–250 (1976) (selling property); 6–1–10 (1976) (declaring bankruptcy).

In *Cash,* the court noted that statewide rules concerning teacher certification or core curriculum or even the power of the state board to suspend the powers of the local board "does not mean that, in the matters of administration and employee relations, the local school boards are not

5

autonomous." *Id.* at 226. While the *Smith* court reviewed numerous statutes and regulations governing various aspects of state education, this court considers that many of those regulations are statewide standards akin to core curriculum or certification requirements to ensure base levels of performance and education across the State. Accordingly, such standards do not ultimately undermine the conclusion that the District actually administers the programs and maintains compliance with the standards. *See* S.C. Code. Ann. § 59–19–90(5), (7) (1976) (giving the local board of trustees the authority to "take care of, manage and control the school property of the district" and to "[m]anage and control local educational interests of its district, with exclusive authority to operate or not to operate any public school or schools").

Further, though South Carolina appears to retain veto power over some school district decisions, such as requiring prior approval before the districts may buy or sell real property or begin construction, that ultimately does not undermine the conclusion that the District retains autonomy. Finally, neither party has argued how the State could have vetoed the District's decisions and policies at issue here. In sum, the Court finds that, despite South Carolina's veto power over some aspects of the District's affairs, the District has failed to show that the State's veto power deprives it of the substantial autonomy it has in administering the policies and standards of the State.

### b. Whether the District Deals with Local or Statewide Concerns

Defendants concede this factor weighs in favor of finding Defendants are not immune from suit. (Dkt. No. 21 at 5).

### c. The Manner in Which State Law Treats the District

Quoting from *Smith*, 324 F. Supp. at 795, Defendants argue that this factor weighs in their favor because "the legislature has extensive control over the governance structure of the districts.

6

The legislature determines, among other things, the number of trustees to sit on a school board, the length of their terms, and date and manner of their elections."

The Court rejects this argument and finds more persuasive the reasoning articulated in *Grady* and *Child Evangelism Fellowship* that this factor weighs in favor of finding Defendants are not an arm of the state. As explained in *Ellerbe Becket,* the question is whether the State treats the District as its alter ego. 407 F.3d at 265. As stated in *Cash,* this inquiry "overlaps with [the court's] analysis of State control versus local autonomy." 242 F.3d at 226. Despite some noted differences, there are numerous factors listed above, such as the ability of the District to contract, to own property, and to carry liability insurance, which weigh in favor of finding that the District is treated more like a local entity than an arm of the State.

Further, in *Cash,* the court noted that in the North Carolina statutes dealing with state departments, school districts are "expressly excluded" from the definition of a state agency. 242 F.3d at 226. Defendants have raised no argument with respect to the definition of a state agency under South Carolina law. Finally, as noted above, not only may the District sue and be sued, but school districts have brought suit against the State. *See, e.g., Richland County Sch. Dist. 2 v. South Carolina Dep't of Educ.,* 335 S.C. 491, 517 S.E.2d 444 (S.C. Ct. App. 1999); *Abbeville County Sch. Dist. v. State of South Carolina,* 335 S.C. 58, 515 S.E.2d 535 (1999). That school districts have brought suit against the State weighs in favor of a finding that the State treats the District not as an arm of the state, but as an autonomous entity. Therefore, after careful consideration of the record and the relevant law, the court concludes that the Eleventh Amendment does not provide immunity to Defendants.[2]

---

[2] Plaintiff also correctly argues that Defendants are alleged to accept federal funds and thus have waived Eleventh Amendment immunity to suit as per claims under the Rehabilitation Act and Title

7

### b. Plaintiff's ADA and Rehabilitation Act Claims Are Adequality Pled

Defendants argue that Plaintiff's claims under the ADA and Rehabilitation Act do not meet applicable pleading standards. (Dkt. No. 21 at 7-10).

Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is "substantially the same." *Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012). To state a claim under the ADA or the Rehabilitation Act, plaintiffs must show: (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016)

The Court finds that Plaintiff's ADA and Rehabilitation Act claims are adequately pled. To the extent Defendants argue that Plaintiff has not adequately alleged that an "impairment implicates at least one major life activity" of his or that Plaintiff has not adequately alleged how bullying affected the educational services provided by the District, the Court rejects the contention. The Amended Complaint alleges M.S. was "under the primary disability category of Developmental Delay and the secondary disability category of Speech/Language Imprisonment," that M.S. has a Specific Learning Disability in the areas of "math, reading, written expression, and speech language," that M.S. was routinely bullied and harassed and reported such bullying, that such bullying affected M.S.'s ability to focus on his work while in school, and that prior to the assault which took place on January 31, 2020 Defendants' practice was for M.S. to be

---

IX. *See* 42 U.S.C. § 2000d-7(a)(1); *Squires v. S.C. Dep't of Health & Env't Control*, No. 4:16-CV-02414-RBH, 2017 WL 874986, at *3 (D.S.C. Mar. 6, 2017).

"accompanied by an employee, agent, servant, or volunteer of Defendants in the hallways . . . during regular school hours." (Dkt. No. 19 ¶¶ 102, 104, 133, 141, 145). At this stage of the litigation, drawing all reasonable inferences in favor of Plaintiff, the nonmoving party, these allegations suffice to plausibly allege claims that M.S. was denied educational benefits on account of a disability that substantially limited major life activities.

Accordingly, the Court rejects Defendants' argument that Plaintiff's ADA and Rehabilitation act claims are inadequately pled.

### c. Plaintiff's § 1983 Are Adequately Pled

Defendants argue that Plaintiff's § 1983 claims are inadequately pled because Plaintiff does not articulate the District's policies or practices which led to his injuries. (Dkt. No. 21 at 10-11). Plaintiff opposes on the ground that the Amended Complaint adequately identities these policies. (Dkt. No. 22 at 18-19).

"Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)).

A municipality cannot be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional

9

implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. *Monell* claims can arise (1) through an express policy; (2) through the decisions of final policymakers; (3) through an omission, such as failure to properly train officers, that manifests deliberate indifferent to the rights of citizens; or (4) through persistent and widespread practices equating to the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). A school board can be held libel under § 1983 when execution of its policy or custom inflicts constitutional injury. *Sciacca v. Durham County Board of Ed.*, 509 F. Supp. 3d 505, 517 (M.D.N.C. 2020); *Mosely-Jenkins v. Orangeburg Cty. Consol. Sch. Dist. 4*, C/A No.: 5:19-cv-00701-JMC, 2020 WL 1443262, at *3 (D.S.C. Mar. 25, 2020).

To prevail under a *Monell* claim, a plaintiff must point to a "persistent and widespread practice [] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference" *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). Knowledge and indifference can be inferred from the extent of employees' misconduct. *Id.* at 1391. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. *Id.* "Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is by definition easier." *Owens,* 767 F. 3d at 403 (citing *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570)). To survive a motion to dismiss under rule 12(b)(6), a complaint need only allege facts, which if true, 'state a claim to relief that is plausible on its face.'" *Id*. At the motion to dismiss stage of the litigation, "the recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570)). A plaintiff fails to state

10

a claim only when he offers "labels and conclusions" or formulaically recites the elements of his § 1983 cause of action. *Id*. (citing *Iqbal*, 556 U.S. at 678).

Upon review of the Amended Complaint, and contrary to Defendants' assertions otherwise, Plaintiff adequately alleges policies, practices, or customs which caused Plaintiff's injuries. *See, e.g.*, (Dkt. No. 19 ¶ 125) (alleging that it was the official policy/custom of Defendants to "ignore reports of bullying and harassment"); (*Id.* ¶ 126) (alleging that it was the official policy/custom of Defendants "to fail to properly train, oversee, and monitor Defendants' employees, staff, and agents regarding the rights of students in the Colleton County School District"); (*Id.* ¶ 127) (alleging that it was the "official policy and/or custom, practice, or procedure of Defendant[s] . . . [to] fail[] to properly hire and retain employees . . . who could understand the needs and rights of students . . . including M.S."). Plaintiff supports these allegations with specific factual matter related to multiple incidents of abuse. *See* (Dkt. No. 19 ¶ 133) (alleging that M.S. was called "retarded" and "slow," had his chair pulled away from him as he was sitting down, had his eyeglasses purposely broken, and that such incidents were reported to Defendants); (*Id.* ¶¶ 145, 149) (alleging that, at a later time, on January 31, 2020, M.S. was not accompanied by an employee or agent of Defendants though he usually was and was sexually assaulted as a result).

Accordingly, Defendants' motion to dismiss is denied on this point.

### d. Plaintiff's ADA, Rehabilitation Act, and § 1983 Claims Against the Individual Defendants in their Official Capacity Are Duplicative

Defendants argue that, as to Plaintiff's ADA, Rehabilitation Act, and § 1983 claims, Plaintiff's claims against individual defendants in their official capacities are duplicative and should be dismissed. In opposition, Plaintiff simply states that "it is proper for Plaintiff to assert § 1983 claims against the individually named Defendants and the named municipal entity Defendants." (Dkt. No. 22 at 19).

11

The Court grants Defendants' motion on this point and dismisses claims against the named individual defendants in their official capacity as to Plaintiff's § 1983, Rehabilitation Act, and ADA claims. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin *in his official capacity* as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.") (emphasis added); *Faulkner v. York County School District*, No. 0:21-cv-2090, 2022 WL 673684, at *9 (D.S.C. 2022) (noting that "if Plaintiffs seek to hold Abraham liable in his official capacity, such claim fails as both duplicative and because he is not a 'person' amenable to suit as a matter of law" under § 1983); *Bolds v. S.C. Dep't of Mental Health*, No. 220CV01653RMGMHC, 2021 WL 1413324, at *2 (D.S.C. Feb. 11, 2021), *report and recommendation adopted*, No. 2:20-CV-01653-RMG, 2021 WL 960506 (D.S.C. Mar. 15, 2021), *appeal dismissed*, No. 21-1419, 2021 WL 4771842 (4th Cir. June 21, 2021) ("Defendants also argue the claim against Defendant Landrum should be dismissed because individuals, acting individually or officially, are not subject to suit under Title II of the ADA. The Court agrees that individual capacity claims are not viable under Title II. . . . Plaintiff's claim against Defendant Landrum in her official capacity is essentially a claim against DMH and, thus, should be dismissed as duplicative."); *McNulty v. Bd. of Educ. of Calvert Cty.*, No. Civ. A. DKC 2003-2520, 2004 WL 1554401, at *6 (D. Md. July 8, 2004) ("As with Title II of the ADA, Section 504 of the Rehabilitation Act 'does not permit actions against persons in their individual capacities.'")

e. **Plaintiff's State Law Claims**

First, Defendants argue, and Plaintiff does not dispute, that to the extent Plaintiff's state law claims under S.C. Code Ann. § 15-78-60(25) allege *simple negligence*, those claims are barred by the South Carolina Tort Claims Act ("SCTA"). S.C. Code. Ann. § 15-78-60(25) (A

governmental entity is not liable for loss resulting from "responsibility or duty including but not limited to supervision, protection, control, confinement or custody of any student ... except when the responsibility or duty is exercised in a grossly negligent manner"); *see Clyburn v. Sumter Cnty. Sch. Dist. No. 17*, 317 S.C. 50, 53, 451 S.E.2d 885, 887 (1994). Accordingly, as it relates to the "supervision, protection, control, confinement or custody" of M.S., *see* §15-78-60(25), the Court dismisses Plaintiff's claims only to the extent that they allege simple negligence.

Second, Defendants argue that Plaintiff's state law claims should be dismissed as against individual defendants because Plaintiff has failed to allege that any individual Defendant's conduct constituted actual fraud, malice, intent to harm or a crime of moral turpitude. *See Jensen v. Anderson Cnty. Dep't of Soc. Servs.*, 304 S.C. 195, 205, 403 S.E.2d 615, 620 n.4 (1991) (noting that "when an agency is sued because of the alleged tort of an employee acting within the scope of his or her employment, the Tort Claims Act provides that only the agency shall be named as a party. Governmental employees who commit torts while acting in their official capacity are immune from personal liability unless their conduct constitutes actual fraud, actual malice, intent to harm or a crime of moral turpitude"). In his opposition, Plaintiff does not address this argument.

The Court grants Defendants' motion on the above point. A review of the Amended Complaint reveals that it is devoid of allegations that a particular individual's conduct constituted actual fraud, actual malice, intent to harm or a crime of moral turpitude. *See* (Dkt. No. 19). Accordingly, Plaintiff's state law claims are dismissed as against the named individual defendants.

Third, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress/outrage is barred by the SCTCA. *See* (Dkt. No. 21 at 14); S.C. Code Ann. § 15-78-30(f) (defining "Loss" to mean "bodily injury, disease, death, or damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death, pain and

suffering, mental anguish, and any other element of actual damages recoverable in actions for negligence, but [] not [] the intentional infliction of emotional harm"); *Smith v. City of Charleston*, No. 2:06-CV-00825-DCN, 2007 WL 9735801, at *5 (D.S.C. July 24, 2007) ("Recovery from governmental entities for intentional torts and intentional infliction of emotional distress is specifically barred by the Tort Claims Act.") *citing* § 15-78-30, 15-78-60(17) (government entities not liable for a loss resulting from "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude"). Plaintiff, for his part, argues that in *Bass v. South Carolina Dept. of Social Services*, 414 S.C. 558, 574 (2015), the South Carolina Supreme Court held that a claim for outrage was valid under the SCTCA. *Bass*, 414 S.C. at 575-76 (finding evidence did not support verdict on outrage rendered against S.C. Department of Social Services).

The Court dismisses Plaintiff's outrage claim. State employees can be held liable for outrage in their individual capacities where it is alleged that the tort is committed within the scope of employment and the conduct "constituted actual fraud, malice, intent to harm, or a crime involving moral turpitude. *Tyler W. Hedgepath, Plaintiff, v. E. Richland Cnty. Pub. Serv. Dist., & Larry Brazell, Jack Morin, & Jamie Harris in their individual capacities, Defendants.*, No. 3:21-CV-01705-JMC, 2022 WL 673741, at *2 (D.S.C. Mar. 7, 2022) *citing* § 15-78-70(b); *Smith v. Ozmint*, 394 F. Supp. 2d 787, 792 (D.S.C. 2005). As noted above, however, the Amended Complaint contains no allegations of such conduct as to the individual named defendants. Accordingly, Plaintiff cannot maintain his claim for outrage.

Last, Defendants argue that Plaintiff's state law claim arising out of the sexual assault are excluded by the SCTCA. Defendants argue that they cannot be held liable for the acts or omissions of third parties. (Dkt. No. 21 at 15) (arguing that the alleged assault falls within a "criminal act as

14

alleged and is specifically excluded under the SCTCA"); § 15-78-60(20) (governmental entity not liable for loss resulting from "an act or omission of a person other than an employee including but not limited to the criminal actions of third persons"). Defendants also argue that the complaint does not adequately plead proximate causation as to the alleged negligence/gross negligence claims arising out of the sexual assault. In opposition, (Dkt. No. 22 at 21), Plaintiffs argue they are not suing Defendants "for sexual assault" and that the Amended Complaint "demonstrates foreseeability of Student X's actions and M.S.'s vulnerability." Plaintiffs also argue that the complaint adequately alleges proximate causation.

The Court declines to dismiss Plaintiff's state law claim as it concerns the alleged assault. The Supreme Court of South Carolina has permitted claims somewhat analogous to Plaintiff's to proceed where "the very basis upon which appellant is claimed to be negligent is that appellant created a reasonably foreseeable risk of such third party conduct." *Jeffords v. Lesesne*, 343 S.C. 656, 662, 541 S.E.2d 847, 850 (Ct. App. 2000) *citing Greenville Mem'l Auditorium v. Martin,* 301 S.C. 242, 247 (1990) (upholding jury verdict against City of Greenville based upon its negligence in failing to adequately secure its auditorium during a concert). Further, Plaintiff's complaint contains sufficient allegations as to proximate causation. (Dkt. No. 19 ¶¶ 133, 145-149).

## IV.    Conclusion

For the reasons stated above, Defendant's motion to dismiss (Dkt. No. 21) is **GRANTED IN PART AND DENIED IN PART.** The motion is granted to the extent that: (1) Plaintiff's § 1983, Rehabilitation Act, and ADA claims against the named individual defendants in their official capacities are dismissed; (2) Plaintiff's claims under §15-78-60(25) are dismissed to the extent they allege only simple negligence; (3) Plaintiff's state law claims are dismissed as against the

named individual defendants; and (4) Plaintiff's claim for outrage is dismissed. Defendants' motion to dismiss is otherwise **DENIED.**

      **AND IT IS SO ORDERED**.

                                    s/ Richard M. Gergel
                                    Richard M. Gergel
                                    United States District Judge

June 22, 2022
Charleston, South Carolina