IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| S.H., individually, as Guardian of M.S. (a minor), | ) ) ) | Civil Action No. 2:22-cv-243-RMG |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| Board of Trustees of the Colleton County School District, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

Before the Court is Defendants' motion for summary judgment (Dkt. No. 53). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

I.      **Background**

Plaintiff is the mother and guardian of minor M.S. and brings this action "in her own name for the benefit of and on behalf of M.S." (Dkt. No. 38 at 1). Plaintiff alleges that, while attending Colleton County Middle School, student N.P. sexually assaulted M.S. on January 31, 2020. Plaintiff brings claims against Defendants pursuant to the Americans with Disabilities Act of 1990, as amended ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, the Fourteenth Amendment to the United States Constitution, and South Carolina state law.

On April 23, 2024, the Court granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint ("SAC"). (Dkt. No. 50). The Court granted the motion as to, "Plaintiff's (a) claim for reckless infliction of emotional distress; (b) Plaintiff's state law negligence claims except as to gross negligence; (c) Plaintiff's South Carolina Tort Claims Act claims against individual defendants; and (d) Plaintiff's claims against individual defendants under

the ADA, Rehabilitation Act, § 1983, and Title IX." (*Id.* at 5). The Court otherwise denied the motion. Plaintiff's remaining claims are thus for (1) intentional discrimination under the ADA and Section 504; (2) violation of Title IX; (3) violation of the Equal Protection Clause of the Fourteenth Amendment; and (4) Gross Negligence under the South Carolina Tort Claims Act.

Defendants move for summary judgment. (Dkt. Nos. 53, 59). Plaintiff opposes Defendants' motion. (Dkt. No. 58).

Defendants' motion is fully briefed and ripe for disposition.

## II.    Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

Defendants argue they are entitled to summary judgment under Title IX, the ADA, and Section 504 because no evidence exists in the record of intentional discrimination toward M.S. (Dkt. No. 53 at 11). Specifically, Defendants argue that Plaintiff cannot demonstrate Defendants' deliberate indifference, a required element under the above statutes. *See Koon v. North Carolina*, 50 F.4th 398, 400 (4th Cir. 2022) (noting a litigant can only get compensatory damages—which Plaintiff seeks here—under the ADA for intentional discrimination and that while "[w]hat showing that requires is an open question in this circuit . . . it at least requires deliberate indifference").

Under Title IX, a school may be liable for student-on-student sexual harassment that is "sufficiently severe." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). To state a Title IX claim for student-on-student sexual harassment, a plaintiff must establish "(1) that they were a student at an education institution receiving federal funds; (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021) (hereinafter "*Farifax*"); *see also Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 171 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009) ("Title IX does not make an educational institution the insurer either of a student's safety or of a parent's peace of mind. Understandably, then, 'deliberate indifference' requires more than a showing that the institution's response to harassment was less than ideal. In this context, the term requires a showing that the institution's response was 'clearly unreasonable in light of the known circumstances.' Relatedly, to 'subject' a student to harassment, the

institution's deliberate indifference must, at a minimum, have caused the student to undergo harassment, made her more vulnerable to it, or made her more likely to experience it."). At bottom, an educational institution may be "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648; *Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 578 (D. Md. 2021).

To establish intentional discrimination under the ADA or Section 504, Plaintiff must establish deliberate indifference. *See, e.g.*, *S.S. v. Board of Ed. Of Harford Cnty.*, 498 F. Supp. 3d 761, 791 (D. Md. 2020). A plaintiff must establish more than mere negligence, but a "half-hearted investigation or remedial action will [not] suffice to shield a school from liability." *Fairfax*, 1 F.4th at 271 (alteration in original; quotation omitted); *see S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 75, 77 (4th Cir. 2016) (hereinafter *S.B.*) (noting "[w]e think it clear that the [Title IX's deliberate indifference] reasoning applies to § 504 claims arising from student-on-student harassment or bullying"). "Thus, it is not enough that a school has failed to eliminate student-on-student harassment, or to impose the disciplinary sanctions sought by a victim. Instead, a school will be liable for student-on-student harassment only where its 'response ... or lack thereof is clearly unreasonable in light of the known circumstances.'" *S.B.*, 819 F.3d at 77.

Here, M.S. testified that he remembered getting bullied by a student named "M." and a student named "C." (Dkt. No. 58-13 at 5) ("[T]hey were cursing me out. Saying mean things to me . . . ."); (*Id.* at 6) ("Sometime they'll physically push me . . . ."). M.S. testified he would go to the teacher to report the bullying. (*Id.*). M.S. testified Ms. Moran would do things about the bullying and that Ms. Moran would report the bullying to M.S.'s guidance counselor, with whom M.S. would discuss it. (*Id.* at 7).

Plaintiff testified that M.S. was being bullied in elective classes around 2018-2019. (Dkt. No. 53-1 at 12, 17) (testifying that around January 2019 "[M.S.'s] chair was taken away from him so he could fall. His glasses were broken at school. He was, basically taunted at school."). Plaintiff testified she believed nothing was being done to the bullies and that the school should "maybe [have] writ[ten] them up, [or] suspended them." (Dkt. No. 53-1 at 13).  Plaintiff testified she did not discuss her concerns about M.S.'s physical "protection" with the school during M.S.'s IEP meeting in November 2019. (*Id.* at 14). Plaintiff testified she spoke with M.S.'s music teacher, coach, and principal about the above bullying. (*Id.* at 15-16). Plaintiff then testified that she declined to report any further bullying because she "felt that there wasn't going to be anything done because [the bullying] was repeatedly." (*Id.* at 18-19). While Plaintiff admitted she could not identify any witnesses who possessed knowledge of how the school responded to her above described reports of bullying, she believed M.S. was still being bullied because he would come home upset. (*Id.* at 16, 19). *But see* (Dkt No. 58-2 at 12) (testifying Plaintiff followed up with the principal on one occasion and spoke to the music teacher "a couple of times" and that the music teacher told Plaintiff she had "M.S. [] write down the kids' names that were bullying him" and told M.S. "[h]e was going to pull them out of class and talk with them").

Plaintiff also argues that Defendants knew or should have better appreciated that N.P.— the student who sexually assaulted M.S.—had a problematic behavioral background. *See* (Dkt. No. 58-10 at 19) (expert report of Dr. Joseph Schwartzberg arguing Defendants could have provided N.P, *inter alia*, "in-school supervision").

Considering the above, Plaintiff concludes that Defendants should have provided additional services to N.P. to better "protect M.S. and all students prior to the assault" and that this failure to provide services to N.P. caused M.S.'s assault. (Dkt. No. 58 at 21).

Reading all facts in a light most favorable to Plaintiff, the nonmoving party, the Court grants Defendants' motion for summary judgment on Plaintiffs' Title IX claim. *Davis*, 526 U.S. at 644-45; *Fairfax*, 1 F.4th at 263-64 (requiring plaintiff establish that "the school, through an official who has authority to address the alleged [sexual] harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and [] the school acted with deliberate indifference to the alleged harassment."). Here, in response to the attack on M.S., Defendants expelled N.P. (Dkt. No. 53 at 6). Plaintiff fails to show how this response was "clearly unreasonable," especially given Plaintiff removed M.S. from school days after the assault. Further, Plaintiff cites no case law supporting her theory of liability; namely that, because Defendants knew M.S. had been bullied, arguably on account of his disability, but did not provide adequate services to a third party—N.P.—Defendants intentionally discriminated against M.S. (Dkt. No. 58 at 21-24) ("Defendants ignoring N.P.'s long standing disruptive behavior and not addressing N.P.'s needs was deliberate indifference by Defendants towards N.P., M.S., and all students . . . ."); *Fitzgerald*, 504 F.3d at 171 ("Title IX does not make an educational institution the insurer either of a student's safety or of a parent's peace of mind.).

Plaintiff's ADA and Section 504 claims likewise fail. *S.B.*, 819 F.3d at 76 ("*Davis* sets the bar high for deliberate indifference."). Plaintiff alleges that Defendants "knew" that the bullying M.S. experienced would "escalat[e] and that Student [N.P.] would act or was prone to" sexually assault M.S. (Dkt. No. 38 at 35) ("The acts, omissions, and overall conduct of Defendants proximately caused the bullying and harassment, including the January 31, 2020 incident . . . ."). This contention, however, lacks evidentiary support. Plaintiff testified that after twice reporting the bullying incidents described *supra*, she declined to report any further bullying. Both Plaintiff and M.S. further testified to remedial efforts the school took related to bullying. *See* (Dkt No. 58-

2 at 12); *Koon*, 50 F.4th at 407 ("In general, good-faith efforts to remedy the plaintiffs' problems will prevent finding deliberate indifference, absent extraordinary circumstances.") (citing *S.B.*, 819 F.3d at 77).  And importantly, no evidence in the record exists of prior interactions between N.P. and M.S. or threats of any nature from N.P towards M.S. On such facts, Plaintiff cannot establish Defendants had "actual notice" that N.P. was a threat to M.S. or consciously ignored that such a threat existed. *Koon*, 50 F. 4th at 407.

In sum, Defendants have met their burden showing they are entitled to summary judgment on Plaintiff's Title IX, ADA, and Section 504 claims.

Next, Defendant argues that Plaintiff has not established a violation of her equal protection rights under the Fourteenth Amendment. (Dkt. No. 53 at 17).  Plaintiff alleges Defendants' "policies and/or customs, practices, and procedures" deprived M.S. of access to educational benefits and opportunities and were discriminatory." (Dkt. No. 38 at 36).

"Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "One alleging a violation of section 1983 must prove that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001)).

A municipality cannot be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Local governments can be sued under § 1983 where "the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by that body's officers." *Id.* at 690. *Monell* claims can arise (1) through an express

policy; (2) through the decisions of final policymakers; (3) through an omission, such as failure to

properly train officers, that manifests deliberate indifferent to the rights of citizens; or (4) through

persistent and widespread practices equating to the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471

(4th Cir. 2003). A school board can be held libel under § 1983 when execution of its policy or

custom inflicts constitutional injury. *Sciacca v. Durham County Board of Ed.*, 509 F. Supp. 3d

505, 517 (M.D.N.C. 2020); *Mosely-Jenkins v. Orangeburg Cty. Consol. Sch. Dist. 4*, C/A No.:

5:19-cv-00701-JMC, 2020 WL 1443262, at *3 (D.S.C. Mar. 25, 2020).

To prevail under a *Monell* claim, a plaintiff must point to a "persistent and widespread

practice [ ] of municipal officials," the "duration and frequency" of which indicate that

policymakers (1) had constructive knowledge of the conduct, and (2) failed to correct it due to

their deliberate indifference" *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402

(4th Cir. 2014) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). Knowledge

and indifference can be inferred from the extent of employees' misconduct. *Id.* at 1391. Sporadic

or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant"

violations will. *Id.*

Reading all facts in a light most favorable to Plaintiff, the nonmoving party, the Court

grants Defendants' motion on this point. Plaintiff has forecast evidence that M.S. was bullied, that

both Plaintiff and M.S. reported that bullying, and that bullying of M.S. may have continued after

Plaintiff's reports described above. At best, Plaintiff has put forth evidence of sporadic failures to

investigate or respond to reports of bullying. (Dkt. No. 58 at 26). Plaintiff has not put forth,

however, evidence that such conduct was widespread or flagrant. *Owens*, 767 F.3d at 403. Nor

does Plaintiff establish how M.S. was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 206, 220 (4th Cir. 2016).  Accordingly, the Court grants Defendants motion for summary judgment on Plaintiff's § 1983 claim.

Having granted summary judgment on Plaintiff's federal claims, only Plaintiff's state law claim for gross negligence remains. Because there are no federal claims remaining, the Court declines to exercise supplemental jurisdiction over these state law claims.

As noted by the Fourth Circuit, "once a district court has dismissed the federal claims in an action, it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n. 4 (4th Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 353-54 (1988)). A district court may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C. § 1367(a) "if ... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3). When determining whether to exercise supplemental jurisdiction over state law claims, a district court must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Cohill*, 484 U.S. at 350 n.7).

Here, the Court finds that no party would be inconvenienced or prejudiced by the Court declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Specifically, the Court finds that Plaintiff will not encounter statute of limitations problems relating to this claim. Plaintiff was born on December 8, 2006 and turns 18 on December 8, 2024— roughly six months from now. (Dkt. No. 58-10 at 9). In its April 23, 2024 Order granting in part and denying in part Defendants' motion to dismiss the SAC, the Court noted that S.C. Code Ann.

§ 15-3-40 tolls the time for minors to bring South Carolina Tort Claims Act claims. (Dkt. No. 50 at 4) (noting "§ 15-3-40 tolls the time for persons under 18 years of age to bring South Carolina Tort Claims Act claims.) (citing § 15-3-40 ("If a person entitled to bring an action mentioned in Article 5 of this chapter or an action under Chapter 78 of this title . . . is at the time the cause of action accrued . . . within the age of eighteen years . . . the time of the disability is not a part of the time limited for commencement of the action"). Thus, upon turning eighteen in December, M.S. will have two years to file the instant claim in state court and will not run into statute of limitations problems upon the dismissal of this claim without prejudice.

Further, no underlying issues of federal policy are involved in Plaintiff's state law claims. And the comity factor and considerations of judicial economy weigh in favor of declining to exercise supplemental jurisdiction. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim and dismisses it without prejudice. *See, e.g.*, *Yarborough v. Burger King Corp.*, 406 F. Supp. 2d 605, 609 (M.D.N.C. 2005).

## IV.    Conclusion

The Court has great sympathy for M.S. for the injuries he suffered as a result of the sexual assault by another student.  But for the reasons stated above, Plaintiff's federal claims against the Defendant School District and school officials simply cannot withstand Defendants' motion for summary judgment.

For the reasons stated above therefore, Defendant's motion for summary judgment (Dkt. No. 53) is **GRANTED IN PART AND DENIED IN PART.**  The motion is granted as to Plaintiff's ADA, Section 504, and Title IX claims. The motion is denied without prejudice as to Plaintiff's state law claims, which are dismissed without prejudice.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel
Richard M. Gergel
United States District Judge

June 27, 2024
Charleston, South Carolina